BARBARA A. BLAIR, *Appellee,* v. WILLIAM A. BLAIR *et al., Appellants,* and EDWARD G. BLAIR *et al., Appellees.*

No. 16,519.

SYLLABUS BY THE COURT.

1. WILLS—*Construction.* In construing a will the meaning of the words used will be expanded or restricted so as best to express the purpose and intent of the testator.

2. WORDS AND PHRASES—*"Support and Maintenance."* Where a testator having ample means makes a liberal provision for the "support and maintenance" of his widow, those words will be given a broad and liberal significance when no language is used in connection therewith which tends to restrict or limit their meaning.

3. WILLS—*Provision for Widow—Diversion of the Fund.* The

Blair v. Blair.

provision made by a testator for the support and maintenance of his widow can not be used or diverted to uses or purposes wholly foreign to her maintenance or personal expenses.

4. WORDS AND PHRASES—*"Required."* Where it is provided in the will that the widow may draw from the estate all the money required for her support and maintenance the word "required" will not be interpreted to mean an amount needed or necessary for such purpose, but it will be held to include such sum or sums as she may request or wish to use for such purpose.

Appeal from Atchison district court; BENJAMIN F. HUDSON, judge. Opinion filed May 7, 1910. Reversed.

*James W. Orr, W. P. Waggener,* and *J. M. Challiss,* for the appellants.

*C. D. Walker, Henry D. Ashley, William S. Gilbert,* and *Denton Dunn,* for the appellees.

The opinion of the court was delivered by

GRAVES, J.: This is an action to obtain the construction of a will. Edward K. Blair, a citizen and resident of Atchison, died April 7, 1898, in that city, leaving an estate which largely exceeded in value $100,000. His surviving heirs at law consisted of his widow, Barbara A. Blair, and five children, William A. Blair, John W. Blair, Edward G. Blair, Elwin B. Blair, and Fanny Blair Hackney. He died testate, and his will was duly probated in Atchison county June 29, 1898. William A. Blair, Harry H. Hackney and John W. Blair, having been named by the testator as his executors, were duly appointed, and they legally qualified and entered upon the discharge of their duties as such. Harry H. Hackney is the husband of Fanny Blair Hackney, the testator's daughter. The heirs at law now disagree as to the meaning of the will, and have brought this action to obtain a construction thereof. The portion of the will which they desire construed reads:

"Second. I give, devise and bequeath to my beloved

30—82 KAN.

wife, Barbara A. Blair, should she survive me, all my property and estate, real, personal and mixed, to have and to hold the same during her natural life, subject to the provisions hereinafter contained.

"Third. It is my will that at my death, my executors, hereinafter named, shall immediately take possession, charge and control of my property and estate above mentioned, and of my business, and hold and keep my said estate, property and effects intact, and continue the milling business and all my business as it is now carried on and conducted, collecting rents, making necessary repairs, loaning money, and managing and conducting the same in all respects as I, myself, have conducted the same; my object being that all my estate and property shall be kept together and intact and all my business be continued as it now is until such time as hereinafter provided.

"Fourth. It is my will and I direct that my said executors, out of the net proceeds of my business and earnings of my estate and property, pay over to my said wife, from time to time, for her *support and maintenance,* such amounts thereof and at such times as she may desire and request, and if such earnings exceed the amount *required* by my wife for her maintenance, and accumulate in the hands of my said executors, it is my will that they reinvest the same, as fast as they so accumulate, as part of my estate, and that the same be divided among my children as the balance of my estate."

There are no other clauses in the will which modify these provisions or can be useful in determining their meaning. The contention between the parties seems to be concerning the rights of the widow under the will, she claiming that she is entitled to receive upon request, if she so desires, the whole of the income of the estate, to use as she may desire without restraint from the executors, while the executors contend that they are limited in their disbursements to her to such amount as may be reasonably necessary for her maintenance and support, or, otherwise expressed, what may be required for her living expenses.

The intent of the testator upon this subject does not

Blair v. Blair.

seem obscure or difficult to ascertain. The words "support and maintenance," used in the fourth clause of the will, are not to be understood in a narrow or limited sense, but were used in their broad and liberal meaning, to indicate the general scope and purpose for which the provision was made rather than to point out or limit its amount. This intent is further indicated by the subsequent clause, which reads: "If such earnings exceed the amount required by my wife for her maintenance," etc. This seems to convey the idea that the testator thought the probability that she would require all the income to furnish her with such maintenance as he intended her to have sufficiently strong to warrant a special suggestion that, in case she did not require that amount, then the executors should use the excess for another purpose.

It seems evident that the testator had a decided purpose to provide his widow with means sufficient to enable her to live in such comfort, elegance and style as was befitting a widow who had resources equal to the income of his estate to use for that purpose. But it was not his intent or purpose to provide her with means to engage in any enterprise or business or to promote any object wholly foreign to her maintenance in this liberal manner; within these limits, however, she is the sole judge of her expenses. If the executors think she is extravagant in her expenses socially, for pleasure or otherwise, they may not limit her means on that account. She is mistress of her own life, and independent of them in this respect. The testator evidently reposed full confidence in the judgment and intelligence of his wife, and desired to place her in such a position financially that she could freely live a life of comfort, unlimited in her manner of living except by her own wishes, and he seems by his will to have accomplished this purpose.

In the clause "the amount required by my wife for her maintenance" the word "required" is not used in

the sense of the amount necessary or needed, but indicates the amount which she may request or demand for such purpose.

This indicates sufficiently the views of the court. We do not understand that any real specific request of the widow has been frustrated by the refusal of the executors to comply with her wishes, but, an excess of income having accumulated, the question was presented as to what her rights would be in case she should demand funds for a purpose other than maintenance and support; and for their mutual guidance in the future this application was made as a friendly suit. For the purpose of this action the widow demanded of the executors the sum of $2500, for the purpose of distributing it among the children. This we do not think is within the scope of her rights under the will, and can not be enforced.

The district court held that the entire net income from the estate was the absolute property of the widow, regardless of the purpose for which she desired to use it. We can not concur in this conclusion.

The judgment of the district court is reversed.